UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSEPH RAY MESSER,

        Petitioner,

    v.

W.L. MONTGOMERY, Warden

        Respondent.

No.  2:22-cv-01900-KJM-EFB (HC)

FINDINGS AND RECOMMENDATIONS

Petitioner is a state prisoner proceeding without counsel in this petition for a writ of habeas corpus.  28 U.S.C. § 2254.  He challenges his convictions in the Superior Court of El Dorado County for making criminal threats and disobeying a court order, and the sentence he received.  ECF No. 1.  Petitioner alleges that there was insufficient evidence to support  his conviction for making criminal threats, and that his *Romero* motion to strike a previous felony should have been granted.  *Id.* at 4.  He also alleges that the court's order to pay restitution and fines violated due process.  *Id.* at 5.  For the reasons that follow, the petition must be denied.

/////

/////

/////

/////

/////

1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I.     **Background**

The facts, as relayed by the California Court of Appeal[1], are:

A.  *Responding officers' testimony*

On the morning of May 7, 2019, Deputy Sheriffs Patrick Rude and David Isham responded to a 911 call regarding possible domestic violence and brandishing of a weapon at the victim's residence.  When they arrived at the scene, they contacted the victim, who explained that she had been in a romantic relationship with defendant but they had recently broken up.  The victim said that defendant had come to her house that morning to ask to use her camper shell.  Although she asked defendant to leave, he instead came inside the house and back to her bedroom where they began to argue about the camper shell.  When she refused to give him the camper shell, he became angry and threw a soda against the wall.  He then held up an open pocketknife, threated to slit the victim's throat and kill everyone who lived in the house.

The victim told the officers that in response to defendant's threats, she began to push defendant down the hallway toward the front door.  As she was doing so, defendant grabbed her by the throat, pinned her to the wall, and pushed her face against the wall.  Defendant said something to the effect of, "[Y]ou better recognize who you're talking to."  Defendant then released the victim and left the house.  Once outside, defendant threatened to slice the tires on the victim's vehicle with his knife, which was still in his hand.  After that, defendant got in his truck and left.

Deputy Rude spoke to the victim about an emergency protective order, and the victim said she wanted one.  The victim told Deputy Rude that she feared for her life and the lives of her children after defendant had threatened "to cut her throat" and "kill them."  The victim was not reluctant to get a protective order and never said she did not want or need one.  The victim also voluntarily signed a citizen's arrest form to have defendant arrested.

Although the victim did not have any visible injuries, Deputy Rude testified that the victim reported pain in her face and head.  Deputy Rude described her demeanor as "calm and collected," but he testified that this was not necessarily unusual for a domestic violence victim.

Deputy Rude also interviewed the victim's friend, Michele.  Michele's account was essentially the same as the victim's: defendant followed the victim into the house; defendant refused to leave when asked; defendant and the victim began arguing; defendant became angry, threw a soda bottle, brandished an open knife, and threatened to slit the victim's throat; the victim pushed defendant down the hall and defendant pinned her against the wall; Michele tried to intervene but defendant told her to "get away" or she would be "next," so she left the house.

The victim had a security surveillance video camera at her home that monitored the driveway and front door.  The camera recorded the incident and both Deputy Rude and Deputy Isham watched the video.  The recording showed defendant

---

[1] The facts recited by the state appellate court are presumed to be correct where, as here, the petitioner has not rebutted the facts with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Slovik v. Yates*, 556 F.3d 747, 749 n.1 (9th Cir. 2009) (as amended).

entering the house, remaining inside for about 20 minutes, and then coming back outside and making gestures as if to "punch" the victim's tires, before walking to his own vehicle and leaving.

On May 15, 2018, Deputy Rude contacted the victim again.  At that time, the victim told him that she no longer wanted to prosecute defendant.  Rude was surprised because on the day of the incident, the victim "was adamant that [defendant] was trying to kill her."  However, he acknowledged that it is not uncommon for domestic violence victims to have a change of heart.

B.  *The victim's testimony*

The victim testified that she had known defendant for about a year and was in a romantic relationship with him for about six weeks.  She ended the relationship in April 2019 after defendant disclosed that he previously had been in jail for killing someone in self-defense.  Although she had never felt uncomfortable around defendant, his criminal history made her concerned for her safety and she did not want defendant around her children.

The victim testified that even after she ended their relationship, defendant continued to call her and come to her house.  She testified that he "wasn't really taking no for an answer."  On one occasion, defendant drove to her house uninvited and told her that he was going to sleep in his vehicle in her driveway.  When defendant refused to leave, she allowed him to come inside and sleep on her couch because she did not want her parents, who lived down the street, to see defendant sleeping in her driveway.

On the evening before the incident, defendant called the victim and asked to use her camper shell for his truck.  Defendant was homeless and wanted it for shelter.  The victim was sympathetic but refused to give him the camper shell because she knew it would not fit his truck.  When defendant kept insisting, she became annoyed and told defendant to stop calling and that she was about to leave.  Defendant then revealed that he was waiting at the end of her street and if she tried to leave, he would follow her.  This made her uncomfortable.

Around 8:30 the next morning the victim heard defendant outside her house.  When she went outside, defendant asked for the camper shell.  She did not respond, but turned, went back inside, and walked down the hallway to her bedroom where her friend, Michele, was sitting on the bed.

Defendant followed the victim into her bedroom and asked her again about the camper shell.  After returning some belongings that defendant had left at her house, including a small pocketknife, the victim told defendant that the camper shell would not fit his truck.  They began to argue, and the victim told defendant he needed to leave.  Defendant became angry and threw a soda bottle at the bedroom wall.

At this point, the victim's trial testimony began diverging significantly from her initial statement to the responding officers.  According to the responding officers, the victim stated that after defendant threw the soda bottle, he held up an open knife and threatened to slit the victim's throat and kill everyone who lived in the house.  The victim, in contrast, testified that after defendant threw the soda bottle, she "flipped out" and began pushing defendant down the hallway, trying to force him to leave.  She testified that although she was punching him and cursing defendant, defendant was not punching or cursing her.  However, at some point,

defendant pushed her up against the wall and told her that he would "hurt [her]" and her family "if [she] didn't stop." The victim could not recall if defendant had a knife in his hand when he made the threat, but she denied defendant ever held an open knife up to her face.

The victim testified that defendant's threat made her very upset and scared. When defendant went outside, she grabbed her phone and called 911. The police arrived about 10 minutes later. Michele stayed with her while she waited for the police to arrive.

During the 911 call, the victim went outside to check on defendant and realized he had not yet left the property. She told defendant to leave. As he walked past her truck, defendant told her he was going to "pop" her tires and gestured at her tires. Defendant then got in his truck and drove away.

About a week later, on May 14, defendant called the victim from jail. The victim testified that they apologized to each other for what happened. A recording and transcript of the call were subsequently presented to the jury. During the call, defendant explains that he "flipped out" because the victim would not agree to give him the camper shell and because she had been consoling another man. Defendant asks the victim whether she is "really pushing this," and the victim assures him that she did not want to press charges and that she has been the "opposite" of that.

A day or two after the jail call, the victim had a conversation with Deputy Rude and told him that she did not want to press charges. The victim also testified that she regretted calling the police "almost immediately" after she called 911. She testified that she felt pressured into prosecuting defendant and requesting the emergency protective order. She denied telling Deputy Rude that defendant (1) threatened to slit her throat; (2) threatened to kill everyone in the house; or that he (3) opened the knife and held it up to her face. She denied that her trial testimony was influenced by defendant's call from jail.

C. *Michele's testimony*

Michele testified that she heard defendant arguing with the victim, saw the defendant throw the soda, and saw the victim push defendant down the hall. She testified that she followed them down the hall and saw defendant pin the victim against the wall.

Michele was asked about defendant's threats. She testified she did not personally hear defendant make any threats to the victim, but she heard *the victim* say that defendant had threatened to slit her throat, and she heard defendant tell the victim, "I will hurt you."

D. *Investigator Horn's testimony*

Richard Horn, an investigator from the district attorney's office, interviewed the victim about the incident on May 17, 2019. The victim told Investigator Horn that she did not want to prosecute defendant. Investigator Horn testified that victims of domestic violence often change their statements to "minimize what actually happened to [them]." They sometimes say that they lied to law enforcement because they are embarrassed, or afraid, or for other reasons. He explained that just because they recant or change their statement does not mean the original statement to police was not true.

4

Investigator Horn also interviewed Michele.  He testified that Michele told him that she saw defendant push the victim up against the wall.  Horn testified that Michele "believed" defendant had a knife in his hand but she could not see it.  Michele told him that she heard defendant threaten to slit the victim's throat.

On cross-examination, Investigator Horn was asked if he remembered having a conversation with someone in his office about trying to trick or "hornswoggle" the victim in some way.  He said no.  Defense counsel then played a recording of a voicemail message that Horn left for the victim.  At the end of the message, Horn is heard saying: "'You know, actually[,] he called her from the jail, and I'm trying to hornswoggle her into calling me so she can admit he called her from the jail.  It violates the TRO.'"  Horn testified that he had left a voicemail for the victim and did not properly hang up the phone, allowing the machine to record his subsequent conversation with a coworker.  He was not aware he was still being recorded.

E.  *Defense evidence*

Defendant presented no affirmative defense case.  In argument to the jury, defense counsel conceded guilt as to count 3, but argued the prosecution failed to meet its burden of proof as to count 1.  The defense noted that the case turned on credibility – in particular, the credibility of the responding officers' account of what happened as compared to the victim's account at trial.  The defense's theory was that the victim's initial statement was exaggerated and/or coerced, and she subsequently changed her story because she had a guilty conscience.

F.  *Jury verdict and sentencing*

Defendant was charged in a three-count information with making criminal threats (§ 422 – count 1); assault by means likely to produce great bodily injury (§ 245, subd, (a)(4) – count 2); and misdemeanor disobeying a court order (§ 166, subd. (a)(4) – count 3).  As to count 1, the information alleged that defendant personally used a knife within the meaning of section 12022, subdivision (b)(1).  The information also alleged that defendant had two prior strike convictions (§ 667, subds. (b)-(i)); two prior serious felony enhancements (§ 667, subd. (a)(1)); and one prior prison term enhancement (§ 667.5, subd. (b)).

At the start of trial, the trial court granted the People's motion to dismiss count 2 in the interest of justice.  The court also granted the People's motion to dismiss the prior prison term enhancement and defense counsel's motion to bifurcate the trial on the prior conviction allegations.

The jury found defendant guilty on counts 1 and 3, but found not true the allegation that defendant personally used a knife in the commission of count 1.  Following the jury's verdict, defendant admitted the two prior strike convictions and two prior serious felony allegations.

At sentencing, the court denied defendant's *Romero* motion to dismiss defendant's prior strike convictions and denied his motion to reduce the criminal threats conviction to a misdemeanor under section 17, subdivision (b).  After considering the probation officer's report and recommendation, the court sentenced defendant to an aggregate term of 35 years to life, consisting of a third strike sentence of 25 years to life for count 1, plus five years for each prior serious felony enhancement.  The court also imposed a concurrent 30-day jail sentence for count 3.  Defendant filed a timely notice of appeal on October 26, 2020.

1   *People v. Messer*, No. C092917, 2022 WL 17761 (Cal. Ct. App. Jan. 3, 2022); ECF No. 13-10 at

2   2-9*, review denied*  (March 9, 2022); ECF No. 13-12.

3        Petitioner's appeal of his convictions was rejected by the state appellate court.  ECF No.

4   13-10.  The California Supreme Court denied review.  ECF No. 13-12.

5   **II.**    **Analysis**

6         *A.  Standards of Review Applicable to Habeas Corpus Claims*

7        An application for a writ of habeas corpus by a person in custody under a judgment of a

8   state court can be granted only for violations of the Constitution or laws of the United States.  28

9   U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

10   application of state law.  *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *Estelle v. McGuire*, 502 U.S.

11   62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

12        Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

13   corpus relief:

14
15        An application for a writ of habeas corpus on behalf of a person in custody
        pursuant to the judgment of a State court shall not be granted with respect to any
16        claim that was adjudicated on the merits in State court proceedings unless the
        adjudication of the claim –

17        (1) resulted in a decision that was contrary to, or involved an unreasonable
           application of, clearly established Federal law, as determined by the Supreme
18           Court of the United States; or

19        (2) resulted in a decision that was based on an unreasonable determination of the
           facts in light of the evidence presented in the State court proceeding.

20        Under § 2254(d)(1), "clearly established federal law" consists of holdings of the United

21   States Supreme Court at the time of the last reasoned state court decision.  *Thompson v. Runnels*,

22   705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, 565 U.S.34 (2011); *Stanley v.*

23   *Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06

24   (2000)).  Circuit court precedent "may be persuasive in determining what law is clearly

25   established and whether a state court applied that law unreasonably."  *Stanley*, 633 F.3d at 859

26   (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit precedent may not

27   be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific

28   legal rule that th[e] [Supreme] Court has not announced."  *Marshall v. Rodgers*, 569 U.S. 58, 64

1    (2013) (citing *Parker v. Matthews*, 567 U.S. 37, 47-49 (2012) (per curiam)).  Nor may it be used

2    to "determine whether a particular rule of law is so widely accepted among the Federal Circuits

3    that it would, if presented to th[e] [Supreme] Court, be accepted as correct." *Id.*  Further, where

4    courts of appeals have diverged in their treatment of an issue, there is no "clearly established

5    Federal law" governing that issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

6         A state court decision is "contrary to" clearly established federal law under § 2254(d)(1) if

7    it applies a rule contradicting a holding of the Supreme Court or reaches a result different from

8    Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634,

9    640 (2003).  Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court

10   may grant the writ if the state court identifies the correct governing legal principle from the

11   Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's

12   case.[2] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*,

13   360 F.3d 997, 1002 (9th Cir. 2004).  A federal habeas court "may not issue the writ simply

14   because that court concludes in its independent judgment that the relevant state-court decision

15   applied clearly established federal law erroneously or incorrectly.  Rather, that application must

16   also be unreasonable." *Williams*, 529 U.S. at 412; *accord Schriro v. Landrigan*, 550 U.S. 465,

17   473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its

18   independent review of the legal question, is left with a 'firm conviction' that the state court was

19   'erroneous.'").  "A state court's determination that a claim lacks merit precludes federal habeas

20   relief so long as 'fairminded jurists could disagree' on the correctness of the state court's

21   decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541

22   U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal

23   court, a state prisoner must show that the state court's ruling on the claim being presented in

24   federal court was so lacking in justification that there was an error well understood and

25   /////

26   _____

27        [2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be
     overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
     presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*,

28   384 F.3d 628, 638 (9th Cir. 2004)).

1  comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562

2  U.S. at 103.

3         If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

4  court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*,

5  527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008)

6  (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

7  2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering

8  de novo the constitutional issues raised.").

9         In evaluating whether the petition satisfies § 2254(d), a federal court looks to the last

10  reasoned state court decision. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044,

11  1055 (9th Cir. 2004).  If the last reasoned state court decision adopts or substantially incorporates

12  the reasoning from a previous state court decision, the court may consider both decisions to

13  ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir.

14  2007) (en banc).  "When a federal claim has been presented to a state court and the state court has

15  denied relief, it may be presumed that the state court adjudicated the claim on the merits in the

16  absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at

17  99.  This presumption may be overcome by a showing "there is reason to think some other

18  explanation for the state court's decision is more likely." *Id*. at 99-100 (citing *Ylst v.

19  Nunnemaker*, 501 U.S. 797, 803 (1991)).  Similarly, when a state court decision on a petitioner's

20  claims rejects some claims but does not expressly address a federal claim, a federal habeas court

21  must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson

22  v. Williams*, 568 U.S. 289, 293 (2013).

23         Where the state court reaches a decision on the merits but provides no reasoning to

24  support its conclusion, a federal habeas court independently reviews the record to determine

25  whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v.

26  Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo

27  review of the constitutional issue, but rather, the only method by which we can determine whether

28  a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853.  Where no

1   reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

2   reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 99-100.

3         When it is clear, however, that a state court has not reached the merits of a petitioner's

4   claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

5   habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462

6   F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

7                  *B. Petitioner's Insufficient Evidence Claim*

8         Petitioner maintains that the evidence presented at trial was insufficient to support his

9   conviction for criminal threats. ECF No. 1 at 4. The state appellate court addressed this claim as

10   follows:

11
12        Defendant argues the evidence presented at trial was insufficient to support his
     conviction for criminal threats, in violation of his right to due process.

13        Because defendant has not raised any First Amendment arguments, we review
     defendant's sufficiency of the evidence challenge under the substantial evidence
14        test. (*People v. Wilson* (2010) 186 Cal. App. 4th 789, 805.) Under that standard,
     the defendant bears an "enormous burden" in demonstrating that the evidence does
15        not support the findings. (*People v. Sanchez* (2003) 113 Cal. App. 4th 325, 330.)
     When considering a challenge to the sufficiency of the evidence, we do not
16        reweigh evidence or reevaluate the witnesses' credibility. (*People v. Campbell*
     (2020) 51 Cal. App. 5th 463, 484.) We view the facts in the light most favorable to
17        the judgment, resolving all conflicts in the evidence and drawing all reasonable
     inferences in support of the trier of fact's determination. (*Id.* at pp. 483-484.) We
18        reverse only if no rational trier of fact could have found the essential elements of
     the crime beyond a reasonable doubt. (*Ibid.*)

19        The crime of criminal threats is set forth in section 422. That section provides, in
     relevant part: "Any person who willfully threatens to commit a crime which will
20        result in death or great bodily injury to another person, with the specific intent that
     the statement, made verbally, in writing, or by means of an electronic
21        communication device, is to be taken as a threat, even if there is no intent of
     actually carrying it out, which, on its face and under the circumstances in which it
22        is made, is so unequivocal, unconditional, immediate, and specific as to convey to
     the person threatened, a gravity or purpose and an immediate prospect of execution
23        of the threat, and thereby causes that person reasonably to be in sustained fear for
     his or her own safety or for his or her immediate family's safety, shall be punished
24        by imprisonment in the county jail not to exceed one year, or by imprisonment in
     the state prison." (§ 422, subd. (a).)
25
     In *People v. Toledo* (2001) 26 Cal. 4th 221, our Supreme Court enumerated the
26        five elements necessary to prove a violation of section 422. The prosecution must
     establish that: (1) the defendant willfully threatened to commit a crime which will
27        result in death or great bodily injury to another person; (2) the defendant made the
     threat with the specific intent that it be taken as threat, even if there was no intent
28        of actually carrying it out; (3) the threat, on its face and under the circumstances in

which it was made, was "'so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat'"; (4) the threat actually caused the person threatened to be in "'sustained fear for his or her own safety or for his or her immediate family's safety'"; and (5) the threatened person's fear was "'reasonabl[e] under the circumstances." (*Toledo, supra,* at pp. 227-228.)

Defendant challenges the findings with respect to two of the five elements, contending that the evidence is insufficient to establish that defendant made an "unconditional" threat, or that his threat caused the victim to be in "sustained fear." Neither argument is persuasive.

A. *Unconditional threat*

Defendant contends the evidence is insufficient to support a finding under the third element of the offense, which requires that the threat be "so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat." (§ 422, subd. (a).) Defendant's argument focuses on the victim's testimony at trial, and in particular, her statement on cross-examination that defendant told her, "If you don't stop putting your hands on me, I'm going to hurt you and your family." Defendant argues this testimony establishes that the defendant's threat was conditional. Defendant misconstrues the law and our standard of review.

In addressing a challenge to the sufficiency of the evidence supporting a conviction, we do not review the record looking for isolated bits of evidence that could support a contrary finding by the jury. Rather, we review the whole record in the light most favorable to the judgment to determine whether there is substantial evidence to support the finding made by the jury. (*People v. Kraft* (2000) 23 Cal. 4th 978, 1053; accord, *People v. Cuevas* (1995) 12 Cal. 4th 252, 261.)

Here, there was substantial evidence to support a finding that defendant's threat was unconditional. (*People v. Young* (2005) 34 Ca; 4th 1149, 1181 [the testimony of a single witness may be sufficient].) Deputies Rude and Isham both testified that the victim and Michele told them that defendant had threatened to cut the victim's throat. Although at trial Michele was unable to recall whether she heard defendant say he was going to slit the victim's throat, she recalled the victim telling her that defendant had made the threat. She also testified that she heard defendant tell the victim, "I will hurt you."

Although there was contrary testimony from the victim suggesting defendant's threat was conditional, it is not our role in reviewing the sufficiency of the evidence to reweigh the evidence or judge witness credibility. (*People v. Lindberg* (2008) 45 Cal. 4th 1, 27.) "Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.]" (*People v. Young, supra,* 34 Cal. 4th at p. 1181; see also *People v. Bolin* (1998) 18 Cal. 4th 297, 331 (*Bolin*) [reversal unwarranted unless it appears that upon no hypothesis is there sufficient substantial evidence to support the conviction].) Based on the testimony of the responding officers and Michele, a rational juror could have found that defendant's threat was unconditional.

In any event, section 422 does not require a fully unconditional threat. (*Bolin, supra,* 18 Cal. 4th at pp. 338-339 [noting that most threats are conditional]; accord, *People v. Franz* (2001) 88 Cal. App. 4th 1426, 1448.) Instead, it requires that "the

10

threat must be 'so . . . unconditional . . . . *as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution . . . .*' (§ 422, italics added.) "The use of the word "so" indicates that unequivocality, unconditionality, immediacy and specificity are not absolutely mandated, but must be sufficiently present in the threat and surrounding circumstances to convey gravity of purpose and immediate prospect of execution to the victim.' [Citation.]" (*Bolin*, at pp. 339-340, original italics; accord, *In re George T.* (2004) 33 Cal 4th 620, 635; *People v. Wilson, supra*, 186 Cal App. 4th at p. 806.)  In determining whether conditional language violates section 422, the trier of fact must consider the circumstances under which the threat was made, which may include how the defendant acted before, during, and after the threat, as well as the victim's knowledge of the defendant's prior conduct.  (*In re Ricky T.* (2001) 87 Cal. App. 4th 1132, 1137.)

Here, the circumstances surrounding defendant's threats are such that even if the threats were conditional, a rational juror still could have found that his threats were sufficiently unequivocal, unconditional, immediate, and specific as to reasonably cause the victim to fear for her own safety and the safety of her immediate family.

The defendant showed up at the victim's house uninvited, followed the victim inside even after the victim told him to leave, became angry when the victim refused to do what he wanted and threw a bottle against the wall.  When the victim tried to get him to leave by pushing him down the hallway toward the front door, he pinned her against the wall and told her she better recognize who she was talking to.  He then threatened to puncture her tires when he was on the way back to his truck.  The victim knew defendant had a knife at the time he threatened her.[3] She also knew that defendant previously had killed someone, and she was concerned enough about his criminal history that she ended their relationship because of it.  The victim clearly took defendant's threats seriously, testifying that his threats made her "[v]ery upset" and "[v]ery scared."  Deputy Rude likewise testified that the victim "was adamant that [defendant] was trying to kill her," prompting her to request an emergency protective order and to voluntarily sign a citizen's arrest form.  Thus, on this record, there was substantial evidence to support a finding that defendant's threats were "so" unconditional as to convey "a gravity of purpose and an immediate prospect of execution of the threat."  (§ 422, subd. (a).)

   B.  *Sustained fear*

Defendant also contends the evidence is insufficient to support the jury's implied finding that defendant's threat placed the victim in "sustained fear."  Again, we disagree.

Sustained, for purposes of section 422, means extending beyond what is momentary, fleeting, or transitory.  (*People v. Allen* (1995) 33 Cal. App. 4th 1149, 1156.)  Decisional authority establishes that 15 minutes of fear is "more than sufficient" to constitute sustained fear.  (*Ibid; People v. Wilson* (2015) 234 Cal. App. 4th 193, 197, 201; accord, *People v. Fierro* (2010) 180 Cal. App. 4th 1342,

---

   [3] [Opinion Footnote 2]  The not true finding on the allegation that defendant personally used a knife does not preclude finding a violation of section 422.  Sufficiency-of-the-evidence review is independent of the jury's determination that evidence on another count was insufficient. (*People v. Brugman* (2021) 62 Cal. App. 5th 608, 632-633, citing *People v. Lewis* (2001) 25 Cal. 4th 610, 656.)  Thus, in determining whether substantial evidence supports the finding of guilt for count 1, we are not bound by the jury's not true finding.  (See *Brugman, supra*, at pp. 632-633.)

11

1349 ["When one believes he is about to die, a minute is longer than 'momentary, fleeting, or transitory'"]; see also *People v. Orloff* (2016) 2 Cal. App. 5th 947, 951-954 [telephone death threat induced sustained fear].)

Here, there is substantial evidence to support a finding that the victim was in sustained fear. Even before defendant threatened her, the victim knew defendant previously killed someone, which made her concerned for her safety and the safety of her children. The victim testified that after defendant threatened her, she was "[v]ery upset" and "[v]ery scared." As soon as defendant went outside, she grabbed her phone and called 911. When Deputies Rude and Isham arrived about 10 minutes later, she told them that defendant had grabbed her by the throat, pinned her against the wall, and threatened to slit her throat and kill everyone who lived in the house. Although she appeared "calm" and "collected," Deputy Rude testified that her demeanor was not necessarily unusual. And he testified that she was "adamant that [defendant] was trying to kill her" and "afraid [for herself] and . . . her children." After taking the victim's statement, Deputy Rude discussed an emergency protective order to protect her and her children. She said she wanted one. She also voluntarily signed a citizen's arrest form. Given these facts, a rational juror could have found that defendant's threat placed the victim in a state of sustained fear.

Defendant contends the evidence does not support a finding of sustained fear because defendant had not been violent with or threatened the victim in the past; the victim allowed defendant to sleep on her couch after learning defendant's criminal history; the victim admitted pushing the defendant down the hallway; the victim went outside her house after calling the police; the victim did not leave her house (or take other safety precautions) while waiting for the police to arrive; and because the victim was calm and collected when police arrived. But, again, the test on appeal is whether there is substantial evidence to support the finding of the trier of fact, not whether the appellate court is convinced the evidence proved defendant guilty beyond a reasonable doubt, or whether contrary evidence exists which could have supported a different conclusion by the jury. (*In re Ryan N.* (2001) 92 Cal. App. 4th 1359, 1372; *People v. Johnson* (1980) 26 Cal. 3d 557, 576; *K.F. v. Superior Court* (2014) 224 Cal. App. 4th 1369, 1383, fn. 7.) A conviction will be overturned only if, on the evidence presented, no reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Campbell, supra,* 51 Cal. App. 5th at pp. 483-484.) Our review of the record in this case shows there is substantial evidence by which a reasonable jury could find that defendant made a criminal threat in violation of section 422. Accordingly, we affirm defendant's conviction for criminal threats.

ECF No. 13-10 at 9-15.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358 (1970). There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "[T]he dispositive question under

1  *Jackson* is 'whether the record evidence could reasonably support a finding of guilt beyond a

2  reasonable doubt.'"  *Chein v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting *Jackson,* 443

3  U.S. at 318).  Put another way, "a reviewing court may set aside the jury's verdict on the ground

4  of insufficient evidence only if no rational trier of fact could have agreed with the jury."  *Cavazos*

5  *v. Smith*, 565 U.S. 1, 2 (2011).

6        In federal habeas review of a claim of insufficient evidence, "all evidence must be

7  considered in the light most favorable to the prosecution."  *Ngo v. Giurbino*, 651 F.3d 1112, 1115

8  (9th Cir. 2011).  "*Jackson* leaves juries broad discretion in deciding what inferences to draw from

9  the evidence presented at trial," and it requires only that they draw "'reasonable inferences from

10  basic facts to ultimate facts.'"  *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (per curiam)

11  (citation omitted).  "'Circumstantial evidence and inferences drawn from it may be sufficient to

12  sustain a conviction.'"  *Walter v. Maass,*  45 F.3d 1355, 1358 (9th Cir. 1995 (citation omitted).

13        "A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging

14  the sufficiency of the evidence used to obtain a state conviction on federal due process."  *Juan H.*

15  *v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005).  In order to grant relief, the federal habeas court

16  must find that the decision of the state court rejecting an insufficiency of the evidence claim

17  reflected an objectively unreasonable application of *Jackson* and *Winship* to the facts of the case.

18  *Ngo*, 651 F.3d at 1115; *Juan H.,* 408 F.3d at 1275 & n.13.  Thus, when a federal habeas court

19  assesses a sufficiency of the evidence challenge to a state court conviction under AEDPA, "there

20  is a double dose of deference that can rarely be surmounted."  *Boyer v. Belleque*, 659 F.3d 957,

21  964 (9th Cir. 2011).  The federal habeas court determines sufficiency of the evidence in reference

22  to the substantive elements of the criminal offense as defined by state law.  *Jackson,* 443 U.S. at

23  324 n. 16; *Chein,* 373 F.3d at 983.

24        After reviewing the state court record in the light most favorable to the jury's verdict, this

25  court concludes that there was sufficient evidence introduced at petitioner's trial to support his

26  conviction for criminal threats.  For the reasons expressed by the California Court of Appeal,

27  there was evidence from which the jury could have found that petitioner's threat was

28  "unconditional", such as testimony that petitioner had threatened to cut the victim's throat and

told the victim "I will hurt you." ECF No. 13-10 at 11-12.  In addition, the state law (Cal. Penal Code § 422) under which petitioner was convicted does not require a fully unconditional threat, and the state appellate court's construction of California law is not reviewable by this court. *See, e.g. Bradshaw v. Richey,* 546 U.S. 74, 76 (2005).   Thus, as the state court reasonably found, based on the applicable law and the totality of the evidence, "even if the threats were conditional, a rational juror still could have found that [petitioner's] threats were sufficiently unequivocal, unconditional, immediate, and specific as to reasonably cause the victim to fear for her own safety and the safety of her immediate family." ECF No. 13-10 at 12.

Similarly, there was sufficient evidence to support the jury's implied finding that petitioner's threat placed the victim in "sustained fear," defined by relevant caselaw as a fear that is more than momentary, fleeting, or transitory. *See, e.g., People v. Allen*, 33 Cal. App. 4th 1149, 1156 (1995).  For example, the victim knew petitioner had killed someone, and petitioner pushed her against the wall and threatened to hurt her and her family.  She testified that she was scared and upset for herself and her family, and subsequently called 911.  ECF No. 13-10 at 14.  When the police arrived ten minutes later, the victim reported the threat and wanted to get an emergency protective order because of her fear.  *Id.*  As the state court reasonably found, this evidence, along with other testimony at trial, was substantial enough for a rational jury to find that the victim experienced sustained fear.  *Id.*

Regardless of the fact that there might have been other trial evidence which supported petitioner's version of the events, there was sufficient evidence to support the jury's conviction for criminal threats.  The question in this federal habeas action is not whether there was evidence from which the jury could have found for petitioner on these issues.  Rather, in order to obtain federal habeas relief on this claim, petitioner must demonstrate that the state court's denial of relief with respect to his insufficiency of evidence arguments was an objectively unreasonable application of the decisions in *Jackson* and *Winship* to the facts of this case.  Petitioner has failed to make this showing, or to overcome the deference due to the state court's findings of fact and its analysis of this claim.  Accordingly, petitioner is not entitled to federal habeas relief on his claim of insufficient evidence.

1

       *C. Petitioner's <u>Romero</u> Claim*

2

       Petitioner also maintains that the trial court abused its discretion in denying his *Romero*

3

motion to strike a previous serious felony.  ECF No. 1 at 4.  The state appellate court addressed

4

this claim as follows:

5

       In addition to challenging the sufficiency of the evidence to support his conviction,
defendant argues the trial court abused its discretion when it denied his *Romero*

6

motion at sentencing.  We find no abuse of discretion.

7

       A.  *Additional history*

8

       Prior to sentencing, defendant filed a *Romero* motion asking the court to dismiss

9

his prior "strike" convictions for voluntary manslaughter (§ 192, subd. (a)) and for
driving a vehicle under the influence and personally causing great bodily injury

10

(Veh. Code, § 23153, subd. (a); § 12022.7).  The prosecution opposed the motion,
emphasizing the seriousness of the current offense, defendant's prior criminal

11

history, and his disciplinary record while in custody at county jail.  The trial court
recognized its discretion to dismiss the prior strike convictions, but denied the

12

motion, concluding that defendant did not fall outside the spirit of the Three
Strikes law (§ 667, subds. (b)-(i)).

13

       B.  *Analysis*

14

       Our Supreme Court held in *Romero* that trial courts have discretion under section

15

1385 to dismiss a prior strike when a court finds a defendant falls, in whole or in
part, outside the spirit of the Three Strikes law.  (*Romero, supra*, 13 Cal. 4th at pp.

16

529-530; *People v. Williams* (1988) 17 Cal. 4th 148, 161 (*Williams*).)  In deciding
whether to exercise this discretion, the court must consider three factors: (1) the

17

nature and circumstances of the defendant's present felonies; (2) the nature and
circumstances of the defendant's prior strikes; and (3) the particulars of the

18

defendant's background, character, and prospects for the future.  (*Williams, supra,*
at p. 161.)

19

       A trial court's failure to dismiss a prior strike is subject to review under the

20

deferential abuse of discretion standard.  (*People v. Carmony* (2004) 33 Cal 4th
367, 374 (*Carmony*).)  In reviewing for abuse of discretion, we are guided by two

21

fundamental precepts: (1) the burden is on the party attacking the sentence to
clearly show that the sentencing decision was irrational or arbitrary; and (2) it is

22

not enough to show that reasonable people might disagree about whether to strike
one or more convictions.  (*Id.* at pp. 376-378.)

23

       The scope of a court's discretion always is measured against the legal principles

24

and policies governing the subject of its action.  (*City of Sacramento v. Drew*
(1989( 207 Cal. App. 3d 1287, 1297; *Carmony*, at p. 377.)  It establishes a

25

sentencing requirement to be applied in every case, and "carefully circumscribes"
the trial court's power to depart from it.  (*Ibid.*)  "In doing so, the law creates a

26

strong presumption that any sentence that conforms to [the] sentencing norms
[established by the Three Strikes law] is both rational and proper."  (*Id.* at p. 378.)

27

       In light of this presumption, a trial court will abuse its discretion in failing to strike

28

a prior felony conviction allegation only in limited circumstances, such as where

the trial court was unaware of its discretion or considered impermissible factors in determining whether to dismiss or not dismiss a prior strike. (*Carmony, supra*, 33 Cal. 4th at p. 378.)  But where the trial court, aware of its discretion, "'balanced the relevant facts and reached an impartial decision in conformity with the spirt of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance.'"  (*Ibid.*)  Only in "extraordinary" circumstances, "where no reasonable people could disagree that the criminal falls outside of the three strikes scheme," will a trial court's failure to strike a prior conviction constitute an abuse of discretion.  (*Ibid.; People v. Strong* (2001) 87 Cal App. 4th 328, 338, 343.)

The record shows that the trial court considered the relevant factors described in *Williams, supra*, 17 Cal. 4th at page 161, and reasonably applied them to the facts.

In considering the circumstances and nature of the current offenses, the trial court acknowledged that defendant's section 422 conviction, while perhaps not as egregious as defendant's prior strikes, nevertheless was a serious offense involving a threat to slit the victim's throat and kill her family – a threat which she took seriously because of defendant's prior manslaughter conviction.  The court also remarked that the threat occurred after defendant had been told to leave the residence and at a time when he already had exhibited other acts of aggression. Although the jury did not find true the allegation that defendant used a knife in the commission of the offense, the court noted that the evidence established defendant had a knife in his possession.  [footnote omitted]  The court also noted that the victim's testimony at trial regarding defendant's use of the knife differed from what she initially indicated to law enforcement, and the court found it "interesting" that her story changed shortly after defendant violated the emergency protective order by calling her from jail.  The court also commented on the fact that defendant used another inmate's information to complete the jail call, showing that defendant intended to violate the order and jail protocol.

The court also considered the length and severity of defendant's criminal history, which began in 1994, at age 18, when defendant was convicted for misdemeanor assault with a deadly weapon, for which defendant received 45 days in jail and 36 months probation.  In 1997, while still on probation for the first offense, defendant was convicted of voluntary manslaughter, for which he received an 11-year prison sentence.  In 2009, defendant was convicted of driving under the influence causing great bodily injury, for which he was sentenced to seven years in prison.  In 2017, defendant violated his parole.  Then in 2019, he committed the underlying offenses.  The court emphasized that defendant has not been "free of prison custody for a period of five years in his entire adult life."

Regarding defendant's background, character, and future prospects, the court found that defendant failed to provide the court with any relevant information. When the probation officer attempted to interview defendant to gather information, defendant refused to cooperate and "could not be bothered."  Defendant "tore up and threw away the personal history packet that was . . . provided to him."  As a result, the court had nothing to consider.  (*People v. Lee* (2008) 161 Cal. App. 4th 124, 129 [defendant's failure to present evidence about background, character, or prospects forfeits the right to complain that the court did not take such evidence into account].)  For all these reasons, the court declined to exercise its discretion to dismiss either of defendant's prior strike convictions.

Defendant argues the trial court abused its discretion because his "entire felony record" consists of his two strike convictions, both of which were remote.  But "older strike convictions do not deserve judicial forgiveness unless the defendant

16

has used them as a pivot point for reforming his ways." (*People v. Mayfield* (2020) 50 Cal. App. 5th 1096, 1107.)  No such finding is possible here.  There is no evidence that defendant has undertaken any efforts to reform his behavior.  The gap between convictions is not significant because, as the trial court observed, defendant spent most of that time in prison.  When not incarcerated, defendant has led a nearly continuous life of crime and demonstrated a general indifference to following the rules.  He has performed poorly on probation and parole.  One of his current offenses was committed while defendant was in custody awaiting trial, and the record shows that defendant also had multiple disciplinary actions while housed at the jail.  In addition, all his prior convictions involved crimes of violence.

In sum, given defendant's extensive criminal history, the age of his prior convictions was not a significant mitigating factor mandating that the court strike his prior convictions.  [footnote omitted]  (See *People v. Humphrey* (1997) 58 Cal. App. 5th at pp. 1107-1109; *People v. Pearson* (2008) 165 Cal. App. 4th 740, 749.)

Defendant also argues that it was an abuse of discretion not to strike at least one of defendant's prior convictions because, if sentenced as a second strike offender, defendant would still serve a "substantial" sentence.  However, a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it.  (*Carmony, supra*, 33 Cal. 4th at p. 377.)  If reasonable people might disagree, we may not substitute our judgment for that of the trial court, even if we might have ruled differently in the first instance.  (*Id.* at p. 378.)  On this record, we cannot say the circumstances presented by defendant are so "extraordinary" that no reasonable person could agree the sentence imposed was just.

ECF No. 13-10 at 15-19.

Here, petitioner is challenging the state court's application of state sentencing law.

Habeas corpus relief, however, is unavailable for alleged errors in the interpretation or application

of state sentencing laws by either a state trial or appellate court, unless the error resulted in a

complete miscarriage of justice.  *Hill v. United States,* 368 U.S. 424, 428 (1962); *Hendricks v.*

*Zenon*, 993 F.2d 664, 674 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2s 1083, 1085 (9th Cir.

1985).  So long as a state sentence "is not based on any proscribed federal grounds such as being

cruel and unusual, racially or ethnically motivated, or enhanced by indigency, the penalties for

violation of state statutes are a matter of state concern."  *Makal v. State of Arizona*, 544 F.2d

1030, 1035 (9th Cir. 1976).  Thus, "[a]bsent a showing of fundamental unfairness, a state court's

misapplication of its own sentencing laws does not justify federal habeas relief."  *Christian v.*

*Rhode*, 41 F.3d 461, 469 (9th Cir. 1994).

Applying these principles in federal habeas proceedings, the Ninth Circuit Court of

Appeals has specifically refused to consider alleged errors in the application of state sentencing

17

law.  *See, e.g. Miller v. Vasquez,* 868 F.2d 1116 (9th Cir. 1989.  Thus, in *Miller,* the court refused to examine the state court's determination that a defendant's prior conviction was for a "serious felony" within the meaning of the state statutes governing sentence enhancements.  *Id.* at 1118-19.  The court did not reach the merits of the petitioner's claim, stating that federal habeas relief is not available for alleged errors in interpreting and applying state law.  *Id.* (quoting *Middleton*, 768 F.2d at 1085).

As previously noted, whether or not the state court should have struck petitioner's prior "strike" convictions for voluntary manslaughter and for driving a vehicle under the influence and personally causing great bodily injury is a matter of California law.  Federal courts are "bound by a state court's construction of its own penal statutes," *Aponte v. Gomez*, 993 F.2d 705, 707 (9th Cir. 1993), and this court must defer to the California courts' interpretation of the California Three Strikes Law unless their "interpretation is untenable or amounts to a subterfuge to avoid federal review of a constitutional violation."  *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1399 (9th Cir. 1989.)  There is no evidence of that here.

The sentencing judge in this case declined to strike any of petitioner's prior convictions only after considering all of the relevant circumstances and applying the applicable law.  The California Court of Appeal carefully considered the entire record in rejecting petitioner's claim based on the trial judge's refusal to strike one or more of his prior convictions at the time of sentencing.  Its decision with respect to the application of state sentencing law is not contrary to or an unreasonable application of federal law and does not justify the granting of federal habeas relief.  After a careful review of the sentencing proceedings, this court finds no federal constitutional violation in the state trial court's exercise of its sentencing discretion.[4]  Accordingly, petitioner is not entitled to relief on this claim.

/////

---

[4] If petitioner's sentence had been imposed under an invalid statute and/or was in excess of that actually permitted under state law, a federal due process violation would be presented.  *See Marzano v. Kinchelow*, 915 F.2d 549, 552 (9th Cir. 1990) (due process violation found where petitioner's sentence of life imprisonment without the possibility of parole could not be constitutionally imposed under the state statute upon which his conviction was based).  However, petitioner has not made a showing that such is the case here.

*D.  Petitioner's Claim Regarding Fines and Fees*

When he was sentenced, petitioner was also ordered to pay a restitution fine and two assessments.  Petitioner alleges that his due process rights were violated by the state court's denial of his request to stay and/or strike the fine and assessments.  ECF No. 1 at 5.  The state appellate court addressed this claim as follows:

*Fines and Fees*

A.  *Dueñas*

At sentencing, the court ordered defendant to pay a $2,000 restitution fine (§ 1202.4, subd. (b)), an $80 court operations assessment (§ 1465.8), and an $60 court facilities assessment (Gov. Code, § 70373).  In imposing the restitution fine, the court found that defendant had the ability to pay the fine out of prison earnings over the course of his confinement.  Defense counsel did not object at sentencing.  However, on January 15, 2021, defense counsel sent a letter asking the court to stay the restitution fine and strike the assessments on due process grounds under *Dueñas, supra*, 30 Cal. App. 5th 1157.  The court denied defendant's request without comment.

Defendant now contends the court erred in denying his *Dueñas* request.  The People respond that defendant forfeited this contention by failing to raise a contemporaneous objection at sentencing.  We agree.

Defendant was sentenced on August 28, 2020, well over a year after issuance of the *Dueñas* decision (*Dueñas, supra*, 30 Cal. App. 5th 1157 [decided Jan. 8, 2019]), but he did not assert it, or assert his inability to pay the imposed fine and assessments.  Filing a letter with the court approximately five months after the sentencing, while the case was already on appeal, does not cure his failure to object at sentencing.  (See *People v. Chlad* (1992) 6 Cal. App. 4th 1719, 1725.)  Therefore, we conclude that defendant forfeited his challenge to the restitution fine and assessments.  (*People v. Scott* (1994) 9 Cal. 4th 331, 351-353; *People v. Nelson* (2011) 51 Cal. 4th 198, 227.)

B.  *Assembly Bill 1869*

At sentencing, the court ordered defendant to pay a $1,095 fee for the cost of the probation report (§ 1203.1b).

While this appeal was pending, the Legislature enacted Assembly Bill 1869, which repealed section 1203.1b, effective July 1, 2021.  Assembly Bill 1869 also added a new section 1465.9, which provides: "(a) On and after July 1, 2021, the balance of any court-imposed costs pursuant to Section 987.4, subdivision (a) of Section 987.5, Sections 987.8, 1202, 1203.1e, 1203.016, 1203.018, 1203.1b, 1208.2, 1210.15, 3010.8, 4024.2, and 6266, . . . shall be unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated."  (§ 1465.9, subd. (a).)

Defendant argues that Assembly Bill 1869 retroactively applies to his case and therefore the court should strike the remaining unpaid balance of the probation report fee.  The People do not dispute that Assembly Bill 1869 applies but argue

1    that it is unnecessary for the court to strike it because, as of July 1, 2021, the fee is
2    "automatically vacated" by the terms of the statute. We shall order the fee to be
    stricken.

3    Now that Assembly Bill 169 is effective, it affects (or potentially affects)
4    defendant in two ways. First, the balance of any probation report costs owed by
    defendant under section 1203.1b is unenforceable and uncollectible. (§ 1465.9,
5    subd. (a); *People v. Clark* (2021) 67 Cal. App. 5th 248, 259.) Second, the portion
    of the judgment imposing those probation report costs on defendant must be
6    "vacated." (*Ibid.*)

7    Because Assembly Bill 1869 would require us to vacate a portion of a previously
    imposed sentence based on an offense committed before the effective date of the
8    new law, we must decide whether the new law applies under the reasoning of *In re
    Estrada* (1965) 63 Cal. 2d 740. We conclude that it does. By its plain language,
9    Assembly Bill 1869 is an ameliorative change in the law intended to apply to
    every case (to which is constitutionally can be applied), effective July 1, 2021.
10    (*People v. Clark, supra,* 67 Cal. App. 5th at pp. 259, 260-261.) Because the
    judgment against defendant is not yet final, the new law can be applied to
11    defendant's case. (*People v. McKenzie* (2020) 9 Cal. 5th 40, 46 [discussing when
    case is final for purposes of *Estrada*]; *People v. Esquivel* (2021) 11 Cal. 5th 671,
12    678-680 [same].) Therefore, the portion of the judgment imposing the probation
    report fee must be stricken.[5]

13  ECF No. 13-10 at 6-7.

14       The federal writ of habeas corpus is only available to persons "in custody" at the time the

15  petition is filed. 28 U.S.C. §§ 2241(c), 2254(a); *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968).

16  This requirement is jurisdictional. *Id.* The Ninth Circuit has specifically held that "an attack on a

17  restitution order is not an attack on the execution of a custodial sentence . . . . [Thus,] § 2254(a)

18  does not confer jurisdiction over a challenge to a restitution order." *Bailey v. Hill*, 599 F.3d 976,

19  982-83 (9th Cir. 2010) (citing *United States v. Kramer*, 195 F.3d 1129 (9th Cir. 1999)).

20  Similarly, "the imposition of a fine, by itself, is not sufficient to meet § 2254's jurisdictional

21  requirements." *Bailey,* 599 F.3d at 979 (citing *Williamson v. Gregoire*, 151 F.3d 1180, 1183 (9th

22  Cir. 1998). This is so even if, as here, the petitioner is actually in custody at the time she or he

23  challenges the fine or restitution order. *Bailey*, 599 F. 3d at 979-80.

24       Because petitioner's third ground for relief challenges only the restitution and fines that

25  were ordered as part of his sentence, the "custody" requirement of Section 2254(a) is not satisfied

26  and the court does not have jurisdiction to entertain this claim. In addition, to the extent

27

28      [5] [Opinion footnote 5] We note, however, that this ruling shall not have any effect on
  amounts collected prior to July 1, 2021.

petitioner's claim challenging his restitution order and fines alleges violations of state law,

petitioner has failed to state a cognizable federal habeas claim.  As discussed *supra*, federal

habeas relief does not lie for violations of state law.  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991);

*Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991) (stating that "the issue for us, always,

is whether the state proceedings satisfied due process; the presence or absence of a state law

violation is largely beside the point").   Accordingly, this claim for relief must be denied.

**III.   Recommendation**

For the reasons stated above, it is hereby RECOMMENDED that the petition for writ of

habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen days

after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties. Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

within the specified time may waive the right to appeal the District Court's order.  *Turner v.*

*Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In

his objections petitioner may address whether a certificate of appealability should issue in the

event he files an appeal of the judgment in this case.  *See* Rule 11, Federal Rules Governing §

2255 Cases (the district court must issue or deny a certificate of appealability when it enters a

final order adverse to the applicant).


Dated: February 27, 2023.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

21